**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
lrosen@rosenlegal.com
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff

13 CV 2969

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEDDY ATCHLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>MAGNUM HUNTER RESOURCES CORPORATION, GARY C. EVANS, RONALD D. ORMAND, and FRED J. SMITH, JR.,<br><br>Defendants. | Case No: _____<br><br>ECF CASE<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED** |

RECEIVED
MAY 0 2 2013
U.S.D.C. S.D.N.Y.
CASHIERS

1.     Plaintiff Teddy Atchley ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Magnum Hunter Resources Corporation ("Magnum Hunter" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Magnum Hunter; and (c) review of other publicly available information concerning Magnum Hunter.

## NATURE OF THE ACTION AND OVERVIEW

2.     This is a class action on behalf of purchasers of Magnum Hunter's securities between May 3, 2012, and April 16, 2013, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

3.     Magnum Hunter, an independent oil and gas company, engages in the acquisition, exploration, exploitation, development, and production of crude oil, natural gas, and natural gas liquids primarily in West Virginia, Ohio, Texas, Kentucky, and North Dakota, as well as in Saskatchewan, Canada.

4.     On April 16, 2013, the Company disclosed that it had dismissed its auditor, PricewaterhouseCoopers LLP ("PwC") at the direction of the Audit Committee of the Company's Board of Directors, after PwC advised the Company of material weaknesses in the Company's internal accounting controls. According to the Company, PwC identified certain issues that may have a material impact on the fairness or reliability of Magnum's consolidated financial statements, including: (1) valuation of the Company's oil and gas properties; (2) calculation of

the Company's oil and gas reserves; (3) the Company's position with respect to certain tax matters; (4) the Company's accounting of its acquisition of NGAS Resources, Inc.; and *(5)* the Company's compliance with certain debt covenants.

5.      On this news, shares of Magnum Hunter declined $0.49 per share, or 14.76%, to close on April 17, 2013, at $2.83 per share, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had material weaknesses in its valuation of its oil and gas properties, its calculation of oil and gas reserves, its position with respect to certain tax matters, the Company's accounting of its acquisition of NGAS Resources, Inc. ("NGAS"), and the Company's compliance with certain debt covenants; (2) that, as a result, the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Magnum Hunter common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Magnum Hunter is a Delaware corporation with its principal executive offices located at 777 Post Oak Boulevard, Suite 650, Houston, Texas 77056.

14.     Defendant Gary C. Evans ("Evans") was, at all relevant times, Chairman of the Board of Directors and Chief Executive Officer ("CEO") of the Company.

15.     Defendant Ronald D. Ormand ("Ormand") was, at all relevant times, Executive Vice President and Chief Financial Officer ("CFO") of the Company.

16.     Defendant Fred J. Smith, Jr. ("Smith") was, at all relevant times, Senior Vice President and Chief Accounting Officer of the Company.

3

17.     Defendants Evans, Ormand and Smith are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Magnum Hunter's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.,* the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Magnum Hunter, an independent oil and gas company, engages in the acquisition, exploration, exploitation, development, and production of crude oil, natural gas, and natural gas liquids primarily in West Virginia, Ohio, Texas, Kentucky, and North Dakota, as well as in Saskatchewan, Canada.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     The Class Period begins on May 3, 2012. On this day, Magnum Hunter filed its Quarterly Report on Form 10-Q with the SEC for the 2012 fiscal first quarter. The Company's Form 10-Q was signed by Defendants Evans and Ormand. The Company's Form 10-Q also

4

contained Sarbanes-Oxley required certifications, signed by Defendants Evans and Ormand, who certified:

1.  I have reviewed this report on Form 10-Q of the Company;

2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.  The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f) for the registrant and have:

    a)  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5

5) The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

20.    Additionally, the Company's Quarterly Report filed with the SEC on Form 10-Q on May 3, 2012, contained, in relevant part, the following description of Magnum Hunter's disclosure controls and procedures:

**Evaluation of disclosure controls and procedures**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in the reports we file under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms. Such controls include those designed to ensure that information for disclosure is accumulated and communicated to management, including the Chairman and the Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO"), as appropriate, to allow timely decisions regarding required disclosure.

Our management, with the participation of our CEO and CFO, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) under the Exchange Act) as of March 31, 2012. Based on this evaluation, the CEO and CFO have concluded that, as of March 31, 2012, our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is (1) recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and (2) accumulated and communicated to our management, including our CEO and CFO, as appropriate to allow timely decisions regarding required disclosure.

**Internal control over financial reporting**

There were no changes made in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) during the three months ended March 31, 2012, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

21.     On August 9, 2012, Magnum Hunter filed its Quarterly Report on Form 10-Q with the SEC for the 2012 fiscal second quarter. The Company's Form 10-Q was signed by Defendants Evans and Ormand. The Company's Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Evans and Ormand, substantially similar to the certifications contained in ¶18, *supra.*

22.     Additionally, the Company's Quarterly Report filed with the SEC on Form 10-Q on August 9, 2012, contained, in relevant part, the following description of Magnum Hunter's disclosure controls and procedures:

**Evaluation of disclosure controls and procedures**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in the reports we file under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms. Such controls include those designed to ensure that information for disclosure is accumulated and communicated to management, including the Chairman and Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO"), as appropriate, to allow timely decisions regarding required disclosure.

Our management, with the participation of our CEO and CFO, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) under the Exchange Act) as of June 30, 2012. Based on this evaluation, the CEO and CFO have concluded that, as of June 30, 2012, our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is (1) recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and (2) accumulated and communicated to our management, including our CEO and CFO, as appropriate to allow timely decisions regarding required disclosure.

**Internal control over financial reporting**

There were no changes made in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) during the three months ended June 30, 2012, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

23.     On October 22, 2012, the Company filed a Current Report on Form 8-K with the

SEC. Therein, the Company, in relevant part, stated:

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

The following disclosure is made pursuant to part (a) of Item 4.02.

On October 12, 2012, management of Magnum Hunter Resources Corporation (the "Company") discovered an inadvertent error in the calculation of non-cash share-based compensation expense relating to common stock options granted to employees by the Compensation Committee during the second quarter of 2012 that affected certain items in the unaudited interim consolidated financial statements (the "Financial Statements") contained in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2012, as filed with the Securities and Exchange Commission (the "SEC") on August 9, 2012. The non-cash share-based compensation expense was inadvertently understated due to the misapplication of the vesting schedule of such options (specifically, not taking into account that 25% of such options were exercisable commencing on the date of grant thereof). The error resulted in the understatement of non-cash share-based compensation expense of approximately $3.8 million. The understatement of expense was discovered by management during implementation of a new software system intended to track stock option related compensation expense. The new software system confirmed the accuracy of all other calculations in prior periods relating to this specific expense item.

On October 19, 2012, the Company's Audit Committee met to review the matter, and, after discussions with management, concluded that the Financial Statements should no longer be relied upon due to the adjustments required as a result of the calculation error and concurred with management's recommendations with respect to the implementation of additional procedures and controls designed to address the matter. Management of the Company and the Audit Committee discussed with both PricewaterhouseCoopers LLP, the Company's current independent registered public accounting firm, and Hein & Associates LLP, the Company's previous independent registered public accounting firm through the second quarter of 2012, the matters disclosed in this Form 8-K.

The Company will be filing an amendment to its second quarter ended June 30, 2012 Form 10-Q with the Securities and Exchange Commission.

Our management, including the CEO and CFO, has evaluated the effectiveness of our disclosure controls and procedures as of June 30, 2012. Based on this evaluation, management has concluded that our disclosure controls and procedures were not effective due to a material weakness in the accounting for share-based compensation expense. We did not effectively review supporting documentation for the journal entry for share-based compensation as necessary to properly state non-cash share-based compensation expense on the published financial statements of operations. New procedures and controls are being implemented to ensure that information required to be disclosed by us in the reports that we file or submit under the Securities Exchange Act of 1934 are (1) recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and (2) accumulated and communicated to our management, including our CEO and CFO, as appropriate to allow timely decisions regarding required disclosure. The following are the principal items in the Financial Statements affected by the non-cash compensation expense understatement of $3.8 million:

- General and administrative expense for the three and six month periods ended June 30, 2012 should have been $16,440,000 and $31,639,000, respectively, rather than $12,592,000 and $27,791,000, respectively, as previously reported. This represents an increase of $3,848,000 or 30.6% and 13.9% for these periods, respectively.

- Net loss attributable to common shareholders for the three and six month periods ended June 30, 2012 should have been ($18,463,000) and ($35,515,000), respectively, rather than ($14,615,000) and ($31,667,000), respectively, as previously reported. This represents an increase of $3,848,000 or 26.3% and 12.1% for these periods, respectively.

- Net loss per common share for the three and six month periods ended June 30, 2012 should have been ($0.12) and ($0.25), respectively, rather than ($0.10) and ($0.22), respectively, as previously reported.

These changes in general and administrative expense, net loss attributable to common shareholders and net loss per common share will be properly reflected in the Company's future filings with the Securities and Exchange Commission, as applicable, including an amendment to the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2012. None of these changes has any effect on the Company's compliance with its existing debt covenants or in calculations of the Company's EBITDAX.

In light of the material weakness in the accounting for share-based compensation expense, we have performed and implemented additional new procedures, which

9

include the utilization of new and more experienced personnel to review share-based compensation expense and completing the implementation of software to track such expenses in order to further strengthen this internal control.

24.     On November 9, 2012, Magnum Hunter filed a Notification of Late Filing with

the SEC on Form 12b-25. Therein, the Company, in relevant part, stated:

> State below in reasonable detail why Forms 10-K, 20-F, 11-K, 10-0, 10-D, N-SAR, N-CSR, or the transition report or portion thereof, could not be filed within the prescribed time period.
>
> As reported under Item 4.02 of the Current Report on Form 8-K (the "Form 8-K") filed with the Securities and Exchange Commission on October 22, 2012 by Magnum Hunter Resources Corporation (the "Company"), the Company is in the process of restating its previously issued unaudited financial statements for the quarterly period ended June 30, 2012 included in its Quarterly Report on Form 10-Q (the "Restatement"). The Company is working diligently to complete the Restatement, evaluating identified control deficiencies and the closing and reporting process, including completing and providing the necessary information to its newly appointed Independent Auditors for them to complete their review. Therefore, the Company is unable to complete the Restatement process, evaluate its conclusions regarding internal controls, and file its Quarterly Report on Form 10-Q (the "Form 10-0") for the period ended September 30, 2012 on or before the prescribed due date of November 9, 2012 without unreasonable effort or expense for the reasons described above.
>
> The Company anticipates that it will file the Quarterly Report no later than the fifth calendar day following the prescribed filing date. We refer you to the Form 8-K for more information related to the Restatement, including, without limitation, the nature of the accounting error giving rise to the Restatement.

25.     On November 14, 2012, Magnum Hunter filed its Quarterly Report on Form 10-Q

with the SEC for the 2012 fiscal third quarter. The Company's Form 10-Q was signed by

Defendants Evans, Ormand and Smith. The Company's Form 10-0 also contained Sarbanes-Oxley required certifications, signed by Defendants Evans and Ormand, substantially similar to

the certifications contained in ¶18, *supra.*

26.     Additionally, the Company's Quarterly Report filed with the SEC on Form 10-0

on November 14, 2012, contained, in relevant part, the following description of Magnum

Hunter's disclosure controls and procedures:

### Weaknesses in Internal Controls

In October and November 2012, we identified material weaknesses in our internal controls over financial reporting in connection with (i) our lack of sufficient qualified personnel to design and manage an effective control environment, (ii) our period-end financial reporting process and (iii) our share-based compensation. We have promptly implemented, and are implementing, measures we believe will effectively address these weaknesses. However, any failure to do so could adversely affect our compliance with our reporting obligations under the Securities Exchange Act of 1934, and our compliance with our debt covenants, and therefore our ability to effect borrowings and readily access the capital markets to provide required liquidity.

\* \* \*

### Evaluation of disclosure controls and procedures

We maintain disclosure controls and procedures that are designed to provide reasonable assurance that information required to be disclosed in the reports we file under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms. Such controls include those designed to provide reasonable assurance that information for disclosure is accumulated and communicated to management, including the Chairman and Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO"), as appropriate, to allow timely decisions regarding required disclosure.

Our management, with the participation of our CEO and CFO, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) under the Exchange Act) as of September 30, 2012. Based on this evaluation, our CEO and CFO have concluded that, as of September 30, 2012, our disclosure controls and procedures were not effective due to the material weaknesses described below.

To address the material weaknesses described in this Item 4, we performed additional analyses and other post-closing procedures designed to provide reasonable assurance that our consolidated financial statements were prepared in accordance with generally accepted accounting principles in the United States of America ("US GAAP"). As a result of these procedures, we believe that the consolidated financial statements included in this report fairly present, in all material respects, our financial condition, results of operations, changes in stockholders' equity and cash flows for the periods presented, in conformity with US GAAP.

### Limitations inherent in all controls

Our management, including the CEO and CFO, recognizes that the disclosure controls and procedures (discussed above) and internal controls over financial reporting may not prevent or detect misstatements or fraud. Any controls system, no matter how well designed and operated, can only provide reasonable, and not absolute, assurance of achieving the desired control objectives. Because of such limitations there is a risk that material misstatements or instances of fraud will not be prevented or detected on a timely basis by the financial reporting process. However, these inherent limitations are known features of the financial reporting process. Therefore, it is possible to design into the process safeguards to reduce, though not eliminate, this risk.

**Material Weaknesses**

A material weakness is a control deficiency, or a combination of control deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis. In connection with the restatements and audit adjustments identified, management identified the material weaknesses described below.

*Lack of sufficient, qualified personnel to design and manage an effective control environment.* We did not design an effective control environment with the sufficient complement of personnel with the appropriate level of accounting knowledge, experience, and training in US GAAP to assess the completeness and accuracy of the accounting for complex accounting matters, principally related to equity instruments including convertible preferred stock and related arrangements. This material weakness resulted in the restatement of our Series A Convertible Preferred Units of Eureka Hunter, our commodity and preferred stock embedded derivative liabilities and our loss on derivatives and related disclosures for the three and six month periods ended June 30, 2012 discussed above and resulted in audit adjustments to our condensed consolidated financial statements for the three and nine month periods ended September 30, 2012. This material weakness also contributed to the material weaknesses described below.

*Period -end financial reporting process.* We did not maintain effective controls over the period-end financial reporting process, including controls with respect to the preparation, review, supervision, and monitoring of accounting operations. Specifically, we did not maintain effective controls to provide reasonable assurance that monthly account reconciliations were reviewed on a timely basis and that monthly and quarterly financial information was prepared and reviewed timely. This material weakness resulted in audit adjustments to our condensed consolidated financial statements for the three and nine month periods ended September 30, 2012.

*Share-based compensation.* We did not design effective controls over share-based compensation expense, which is recorded in our general and administrative expenses. Specifically, we did not design effective controls related to the review of supporting details, including the completeness and accuracy of the vesting schedule and the journal entries for share-based compensation expenses. This control deficiency resulted in a misstatement of our general and administrative expense and share-based compensation related disclosures for the three and six month periods ended June 30, 2012 and resulted in the restatement discussed above.

Additionally, the material weaknesses described above could result in misstatements that would result in a material misstatement of the consolidated financial statements in a future annual or interim period that would not be prevented or detected.

**Changes in Internal Control over Financial Reporting**

Except for the material weaknesses discussed above and the remediation plans executed as of September 30, 2012 as noted below, there were no changes made in our internal control over financial reporting (as defined in Rule 13a-15 (f) under the Exchange Act) during the three months ended September 30, 2012, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

27.      On February 28, 2013, the Company filed a Notification of Late Filing with the

SEC on Form 12b-25. Therein, the Company, in relevant part, stated:

**PART III – NARRATIVE**

State below in reasonable detail why Forms 10-K, 20-F, 11-K, 10-Q, 10-D, N-SAR, N-CSR, or the transition report or portion thereof, could not be filed within the prescribed time period.

As previously disclosed in filings with the Securities and Exchange Commission (the "SEC"), in October and November 2012, Magnum Hunter Resources Corporation (the "Company") identified material weaknesses in its internal controls over financial reporting in connection with its (i) lack of sufficient qualified personnel to design and manage an effective control environment, (ii) period-end financial reporting process and (iii) share-based compensation. The Company devoted substantial time and effort to correcting the previously-filed financial statements and information that were impacted by these material weaknesses. Further, the Company implemented, and continues to implement, measures that it believes will effectively address these weaknesses in the future. The implementation of these measures has entailed the substantial efforts of accounting staff and the use of external resources. Additionally, the Company has

devoted significant resources to preparing financial statements and information relating to the Company and its subsidiaries for inclusion in the exchange offer for Senior Notes contemplated by the Company's Registration Statement on Form S-4, which was declared effective by the SEC on February 7, 2013.

The change in the Company's independent auditors, which occurred in July 2012, has resulted in a normal transition between accounting firms that has required the Company to devote more resources to this transition. Therefore, additional internal controls and significant review of certain financial matters were required by the new auditors.

The diversion of these resources has caused the Company to be unable to compile all information necessary to prepare and file its Annual Report on Form 10-K for the year ended December 31, 2012 within the prescribed period (on or before March 1, 2013) without unreasonable effort or expense. The Company anticipates that it will file its Annual Report on Form 10-K no later than March 18, 2013.

28.     The statements contained in ¶¶18-26, were materially false and/or misleading when made because defendants failed to disclose or indicate the following : (1) that the Company had material weaknesses in its valuation of its oil and gas properties, its calculation of oil and gas reserves, its position with respect to certain tax matters, the Company's accounting of its acquisition of NGAS, and the Company's compliance with certain debt covenants; (2) that, as a result, the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

### Disclosure at the End of the Class Period

29.     On February *25,* 2013, the Company filed a Current Report with the SEC on Form 8-K. Therein, the Company, in relevant part, stated:

**Item 4.01 Changes in Registrant's Certifying Accountant.**

On April 10, 2013, Magnum Hunter Resources Corporation (the "Company"), at the direction of the Audit Committee (the "Audit Committee") of the Company's Board of Directors (the "Board"), dismissed PricewaterhouseCoopers LLP ("PwC") as the Company's independent registered public accounting firm for the

fiscal year ended December 31, 2012, effective immediately. PwC was engaged as the Company's independent registered public accounting firm on July 17, 2012. PwC has not completed an audit or issued an audit report on the Company's consolidated financial statements for the fiscal year ended December 31, 2012. The decision to dismiss PwC was unanimously approved by the Audit Committee on April 10, 2013, and such decision was unanimously ratified by the Board on April 13, 2013.

 PwC was not engaged (and did not serve) as the Company's independent registered public accounting firm at any time prior to its engagement as the Company's independent registered public accounting firm on July 17, 2012. During the period beginning on July 17, 2012 and ending on the date of PwC's dismissal (the "Applicable Time Period"), there were no disagreements between the Company and PwC on any matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure, which disagreements, if not resolved to the satisfaction of PwC, would have caused PwC to make reference to the subject matter of the disagreements in connection with its reports on the Company's consolidated financial statements for the fiscal year ended December 31, 2012.

During the Applicable Time Period, there were no "reportable events" as that term is defined in Item 304(a)(1)(v) of Regulation S-K under the Securities Act of 1933, as amended (the "Securities Act"), relating to PwC's engagement as the Company's independent registered public accounting firm, except that PwC advised the Company (A) (i) that information had come to PwC's attention that if further investigated may have a material impact on the fairness or reliability of Company's consolidated financial statements, and this information was not further investigated and resolved to PwC's satisfaction prior to its dismissal, and (ii) of the need to significantly expand the scope of PwC's audit of the Company's consolidated financial statements for the fiscal year ended December 31, 2012, and due to PwC's dismissal, PwC did not complete its expanded procedures (collectively, the matters in (i) and (ii) above, the "PwC Identified Matters"), and (B) of certain deficiencies in the Company's internal controls over financial reporting that constitute material weaknesses during the Applicable Time Period (whether identified by the Company or PwC), which led PwC to believe that internal controls necessary for the Company to develop reliable financial statements did not exist, and therefore, PwC significantly expanded the scope of its audit of the Company's consolidated financial statements for the fiscal year ended December 31, 2012 for purposes of completing such audit. However, the Company believes that it has implemented the internal controls and processes necessary to develop reliable financial statements and allow its successor independent accounting firm to complete the audit of the Company's consolidated financial statements for the fiscal year ended December 31, 2012. The Company will be working with its successor independent accounting firm to complete the audit of such consolidated financial statements.

PwC Identified Matters. The PwC Identified Matters consisted of the following and were under review and analysis by both PwC and the Company at the time of PwC's dismissal. As of the date of the filing of this Current Report on Form 8-K, the Company does not believe that there are any misstatements, errors or omissions that would require any restatement of any of the Company's prior period financial statements. The Company believes that the PwC Identified Matters arose primarily due to a period of rapid growth of the Company. The Company believes that such growth will significantly enhance future shareholder value, but in the near term this growth strained the accounting resources of the Company. The Company has been addressing and will continue to address these issues by expanding and upgrading the personnel in its accounting department and is also utilizing the advisory services of a "Big Four" accounting firm to assist the Company in completing its Annual Report on Form 10-K for the fiscal year ended December 31, 2012 and in upgrading its accounting department and systems.

- *Properly Accounting and Transfers of Unproved Properties.* PwC requested additional information to support the estimation of the valuation of the Company's oil and gas properties (including information regarding the timing of non-cash impairments and lease expirations and extensions). In addition, PwC requested support of the timing of transferring the classification of certain of such properties from unproved to proved and the effect of such transfers on non-cash impairments and depletion. The Company has substantially completed such analysis, which it will provide to its successor independent accounting firm. Such analysis indicated no material adjustments were necessary other than with respect to transfers and impairments that were recorded in the third quarter ended September 30, 2012 and prior periods. As previously disclosed, the Company anticipates unproved property impairments in the amount of $71 million which will be recorded in the quarter ended December 31, 2012. Further additional adjustments, if any, that would be material would all be non-cash charges.

- *Oil and Gas Reserves.* PwC has requested additional information and support for some of the underlying assumptions from which the reserve report issued by the Company's independent petroleum engineering firm on the Company's oil and gas reserves as of December 31, 2012 was derived. Such additional analysis included the proposed capital budget for 2013 supporting such assumptions and analysis of lease operating expenses in the Company's Magnum Hunter Production subsidiary ("MHP"). The Company has completed such analysis and believes no adjustments are necessary to such reserve report as its capital budget supports such assumptions and the MHP lease operating expenses analyzed are consistent with the assumptions made with respect thereto in the reserve report. PwC also requested additional support for the underlying division of interest of properties (which, in addition to oil and gas reserves, could affect other matters including revenues, lease operating

16

expenses and oil and gas properties), although management does not expect the division of interest analysis to result in any material adjustments to these items. In addition, PwC requested that the Company perform additional analysis on its properties in the Tableland Field in Saskatchewan, Canada to determine if any non-cash impairment charges would be required. PwC advised the Company that a material non-cash impairment charge should be recognized for such properties and the Company continues to review this matter based on updated engineering information from its independent petroleum engineering firm. As previously disclosed, the Company anticipates proved property impairments in the amount of approximately $16 million which will be recorded in the quarter ended December 31, 2012. Any such impairment would be a non-cash charge to earnings for 2012. PwC also noted that a 2011 reserve report for certain significant subsidiaries of the Company indicated that it was prepared in accordance with the Canadian Oil and Gas Evaluation Handbook, and at the time of PwC's dismissal, PwC had not received adequate support as to whether such reserve report was prepared in accordance, or was materially consistent, with applicable U.S. and SEC standards. The Company has confirmed that such reserve report was prepared in accordance, and was materially consistent, with applicable U.S. and SEC standards, and it has received a revised cover letter from its independent petroleum engineering firm to such effect (although the Company had not provided such letter to PwC by the time of its dismissal).

- *Income Taxes.* The Company and PwC discussed various issues relating to the Company's treatment of and positions with respect to certain income tax matters. The Company believes that its tax entries for the fourth quarter of 2012 are correct and that there should be no material adjustment to prior period entries.

- *Accounting regarding MHP.* PwC requested that the Company review certain assumptions relating to the Company's initial accounting in connection with its acquisition in 2011 of NGAS Resources, Inc., whose operations are now conducted in or under MHP. PwC also requested further analysis regarding the appropriateness of certain credits recorded in lease operating expenses, whether such credits are appropriate deductions in the reserve report, and, if the credits were not deemed to be appropriate deductions, whether changes in reserves would have a material impact on MHP's proved property impairments. The Company has determined, in conjunction with advice from its "Big Four" accounting firm advisor, that such accounting was recorded properly. PwC was still reviewing such matter and there was no final resolution thereof at the time of its dismissal.

- *Prior Period Restatements.* The Company has reviewed whether Staff Accounting Bulletin 99 might require certain errors, if any, in prior fiscal

years and/or fiscal quarters to be corrected in the applicable prior periods. The Company has determined that the adjustments to date are not material and thus do not require any restatements of prior period financial statements. Further, substantially all adjustments identified to date have been non-cash items.

- *Ability to Meet Debt Covenants.* The ability of the Company to comply with its debt covenants in future fiscal periods related primarily to the late filing of the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2012. The Company has obtained waivers relating to this late filing under certain of its debt agreements, and intends to address the issues relating to this late filing arising under the indenture governing the Company's outstanding senior notes. In addition, the Company calculated projected financial statements and projected compliance with associated financial covenants under its debt agreements (based on the assumed closing of the Company's previously announced sale of its Eagle Ford Shale properties in which the cash portion of the purchase price is expected to be approximately $380 million (after purchase price adjustments) as well as the Company's revised upstream capital budget of $300 million). The Company believes that it will be able to remain in compliance with its financial covenants for the foreseeable future. Further, the Company has taken, and will continue to take, the appropriate additional actions necessary to prevent or cure any non-compliance with non-financial covenants under the Company's debt agreements as a result of the Company's failure to timely file its periodic reports under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), with the SEC.

- *Capitalized Interest. PwC* asked the Company to consider whether certain interest expense associated with its unproved oil and gas properties should be capitalized. The Company's policy is to capitalize interest on expenditures for significant exploration and development projects that last more than six months. The Company and PwC were discussing approaches to capitalized interest but no conclusion had been reached at the time of PwC's dismissal. The Company's preliminary assessment is that it did not have any capitalized interest expense associated with the development of its unproved oil and gas properties because none of such projects exceeded six months. Any such adjustment in this regard would be a positive non-cash increase to net income in prior periods.

- *Assets Held for Sale.* In connection with the Company's pending sale of its Eagle Ford Shale properties, PwC asked the Company to consider whether such properties should be classified as "assets held for sale" as of December 31, 2012. The Company, in conjunction with advice from its "Big Four" accounting firm advisor, determined that the conditions required for such classification did not exist at December 31, 2012.

- *Miscellaneous.* In addition, other PwC Identified Matters include issues with respect to the Company's asset retirement obligations, revenue and lease operating expense accruals, share-based compensation, information technology systems and general controls, and manual post-closing entries, each of which were under review by PwC at the time of its dismissal and some of which the Company believes it has previously disclosed and corrected. The Company continues to review these matters and will review them with its successor independent accounting firm, but at this time, the Company does not believe that these matters will materially impact the Company's consolidated financial statements. Internal Controls PwC advised the Company of the five categories of below-described deficiencies that constitute, or that PwC considered might constitute, material weaknesses in the Company's internal controls over financial reporting. The first, second and fourth categories below were generally previously disclosed by the Company.

<u>Internal Controls.</u>   PwC advised the Company of the five categories of below-described deficiencies that constitute, or that PwC considered might constitute, material weaknesses in the Company's internal controls over financial reporting. The first, second and fourth categories below were generally previously disclosed by the Company.

- *Effective Control Environment to Meet the Company's Growth*

\* \* \*

- *Financial Reporting*

\* \* \*

- *Leasehold Properly Costs*

\* \* \*

- *Complex Accounting Issues*

\* \* \*

- *Miscellaneous Internal Control Deficiencies*

30.     On this news, shares of Magnum Hunter declined $0.49 per share, or 14.76%, to close on April 17, 2013, at $2.83 per share, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Magnum Hunter's securities between May 3, 2012 and April 16, 2013, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Magnum Hunter's securities were actively traded on the New York Stock Exchange (the *"NYSE"*). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Magnum Hunter shares were traded publicly during the Class Period on the NYSE. As of November 13, 2012, the Company had 168,627,014 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Magnum Hunter or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Magnum Hunter; and

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

37.     The market for Magnum Hunter's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Magnum Hunter's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Magnum Hunter's securities relying upon the integrity of the market price of the Company's securities and market information relating to Magnum Hunter, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Magnum Hunter's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Magnum Hunter's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Magnum Hunter's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Magnum Hunter's securities at artificially inflated prices and were damaged thereby. The price of the Company's

securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors's losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Magnum Hunter, his/her control over, and/or receipt and/or modification of Magnum Hunter's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Magnum Hunter, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESEUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Magnum Hunter's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Magnum Hunter's securities traded at artificially inflated prices during the Class Period. On May 3, 2012, the Company's stock closed at a Class Period high of $5.76 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Magnum Hunter's securities and market information relating to Magnum Hunter, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Magnum Hunter's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Magnum Hunter's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Magnum Hunter and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Magnum Hunter's securities was an efficient market for the following reasons, among others:

(a)     Magnum Hunter stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Magnum Hunter filed periodic public reports with the SEC and/or the NYSE;

(c)     Magnum Hunter regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

24

(d)     Magnum Hunter was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Magnum Hunter's securities promptly digested current information regarding Magnum Hunter from all publicly available sources and reflected such information in Magnum Hunter's stock price. Under these circumstances, all purchasers of Magnum Hunter's securities during the Class Period suffered similar injury through their purchase of Magnum Hunter's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Magnum Hunter who knew that the statement was false when made.

## FIRST CAUSE OF ACTION
### Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Magnum Hunter's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Magnum Hunter's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Magnum Hunter's financial well-being and prospects, as specified herein.

52.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Magnum Hunter's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Magnum Hunter and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Magnum Hunter's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Magnum Hunter's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Magnum Hunter's securities during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Magnum Hunter was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Magnum Hunter securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CAUSE OF ACTION
### Violation of Section 20(a) of The Exchange Act
#### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of Magnum Hunter within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were

29

provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Magnum Hunter and the Individual Defendants each violated Section 10(b) and Rule l0b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon:

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 2, 2013                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen, Esq. (LR5733)
lrosen@rosenlegal.com
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, NY, 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Magnum Hunter Resources Corporation. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Magnum Hunter Resources Corporation. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** teddy
**Middle initial:** j
**Last name:** atchley
**Address:**
**City:**
**State:**
**Zip:**
**Country:** usa
**Facsimile:**
**Phone:**
**Email:**

REDACTED

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 4/8/2013 | 418 | 3.9283 |
| Common Stock | 4/15/2013 | 1928 | 3.5882 |
| Common Stock | 4/15/2013 | 86 | 3.45 |
| Common Stock | 4/15/2013 | 89 | 3.31 |

**Certification for teddy atchley (cont.)**

Sales:

| Type of Security | Sale Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock4/18/2013 | 2521 | 2.80 | |
| Common StockSell Date | # of Shares | Price per Share | |

7.  I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate:            **YES**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 05/01/2013

Teddy J Atchley